Estella M. **PARKER,** Plaintiff,

v.

**NATIONAL CORPORATION FOR HOUSING PARTNERSHIPS,** Defendant.

Civ. A. No. 84–1703.

United States District Court, District of Columbia.

Aug. 22, 1985.

**2.** *See infra* note 1.

Steven M. Levine, Washington, D.C., for plaintiff.

Michael L. Stevens, Stanley J. Brown, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This case is now before the Court on the motion to dismiss, or in the alternative, for summary judgment by the defendant National Corporation for Housing Partnerships (NCHP). In her complaint, the plaintiff Estella Parker alleges that NCHP subjected her to unequal terms and conditions of employment on the basis of race and to retaliation for having filed a complaint with the Equal Employment Opportunity Commission (EEOC). The Court finds that the doctrine of administrative res judicata bars the plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the District of Columbia Human Rights Act of 1977, D.C.Code § 1–2501 *et seq.*, and 42 U.S.C. § 1981 (section 1981), which previously were adjudicated by the District of Columbia Commission on Human Rights acting in its judicial capacity. The Court further finds that the plaintiff's

breach of contract claim is barred by the statute of limitations and, moreover, that it fails to state a claim upon which relief could be granted. Finally, the Court finds that the plaintiff's allegations of an intentional tort for wrongful discharge in violation of public policy and of a breach of an implied covenant of good faith and fair dealing are not actionable in the District of Columbia and further are barred by the statute of limitations.

Although the facts regarding the alleged acts of discrimination are irrelevant for the purposes of this motion, a recitation of the procedural history of this suit is necessary. The plaintiff filed an EEOC complaint on December 5, 1980, asserting that she was discriminated against by her employer, NCHP, on the basis of race. Pursuant to Title VII, the EEOC referred the charges to the District of Columbia Office of Human Rights (OHR), the "state" agency which enforces the District of Columbia law prohibiting discrimination. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(c); District of Columbia Human Rights Act of 1977, D.C.Code § 1–2501 *et seq.*

Pursuant to the Human Rights Act, the plaintiff signed the OHR complaint on December 22, 1980, about the time she was placed on probation from her job. The plaintiff was terminated by NCHP on March 6, 1981. Three days later, she amended her complaint to include the charge of retaliatory termination for having filed her initial complaint. On August 12, 1981, the OHR determined that there was no probable cause to credit the allegations of disparate terms and conditions of employment based on race, but that there was probable cause to support the allegations as to retaliation. Thereafter, the retaliation complaint was certified to the Commission on Human Rights (Commission) for a public hearing.

On November 11, 1982, the Commission dismissed the action with prejudice on the basis of OHR's failure "due largely to the failure of the complainant, to proceed with the timely prosecution of the complaint properly before the Commission." Commission on Human Rights' Ruling on Application for Reconsideration of Final Decision and Order (Docket 81–PE–151 May 30, 1984). The Commission detailed the delays in its ruling denying reconsideration as follows:

September 21, 1981: Retaliation complaint certified to the Commission for public hearing.

November 25, 1981: Pre-Hearing conference scheduled for January 8, 1982. Continued at the request of OHR to February 9, 1982.

February 12, 1982: Pre-Hearing Conference convened. Deposition of complainant scheduled for June 3, 1982. Hearing scheduled for June 14, 1982.

February 17, 1982: Complainant's request for reconsideration of Director OHR's dismissal of complaint of disparate terms and conditions of employment based on race submitted to Chair OHR.

Deposition of complainant rescheduled for June 25, 1982. Hearing continued at joint request of the parties until July 27, 1982. Hearing continued at joint request of the parties until July 27, 1982.

June 7, 1982: Ruling of Chairperson COHR on complainant's application for reconsideration of dismissal by Director OHR of complaint of disparate terms and conditions of employment based on race issued—determination of Director OHR affirmed.

Deposition of complainant and hearing postponed at complainant's request until after July 1982.

June 30, 1982: Complainant advised by Counsel for OHR to seek representation—lack of cooperation in preparation of case in support of complaint cited.

August 11, 1982: Interim Order of the Commission issued—OHR required to provide representation for the case in support of the complaint within thirty (30) days.

August 25, 1982: Hearing scheduled for September 20, 1982.

Hearing continued at the joint request of the parties to October 21, 1982. Deposition of complainant scheduled for September 23, 1982.

September 28, 1982: Notice of appearance of FTC attorney serving *pro bono* as Counsel of OHR.

Hearing continued to December 2, 1982.

11–2–82: Notice of appearance of FTC attorney serving *pro bono* as Counsel for OHR withdrawn—lack of cooperation in preparation of case in support of complaint cited.

11–2–82: Respondent's motion to dismiss for failure to prosecute.

11–18–82: Order dismissing complaint for failure to prosecute issued by Commission.

11–26–82: Complainant's request for reconsideration of Final Decision and Order.

12–14–82: COHR notified of Director OHR's intent to support complainant's application for reconsideration.

1–5–83: Complainant informed by OHR that due to her unwillingness to proceed on the basis of her complaint of retaliation, the Office could no longer be of assistance in supporting her application for reconsideration.

In summary, the plaintiff refused to attend her prehearing depositions, thereby precipitating postponements such that the Commission's efforts to conduct a hearing on the plaintiff's claims were interrupted no less than six times. Furthermore, at least three OHR representatives complained of the plaintiff's failure to cooperate in the preparation of her case. One of those representatives was pro bono counsel from the Federal Trade Commission who represented the plaintiff from September 28, 1982, until November 2, 1982, when counsel withdrew due to lack of cooperation by the plaintiff. The dismissal order was sustained on the basis of the plaintiff's late filing for reconsideration six months after the expiration of the filing period, the

previous answer by the Commission upon reconsideration of the disparate terms and conditions charge, the plaintiff's historical lack of cooperation, and the previous interruptions in processing the complaint caused by the plaintiff.

Prior to the Commission's second ruling, the EEOC issued a Notice of right-to-sue and the plaintiff filed a *pro se* complaint in this court rather than obtaining judicial review of the agency's decision in the District of Columbia Court of Appeals pursuant to D.C.Code § 1–2554. At the first status call before this court, the plaintiff did not appear until after the case had been called and the undersigned had left the bench. She was told to reappear and advised to obtain an attorney. At the second status call, on October 3, 1984, she again appeared without counsel. Thereafter, the Court was able to appoint a volunteer attorney to represent her.

I

The Court turns first to the plaintiff's claims under Title VII, § 1981, and the Human Rights Act as asserted in her amended complaint. The defendant argues that these claims should be dismissed pursuant to the doctrine of res judicata and collateral estoppel because they are identical to the race discrimination and retaliation claims that the Commission dismissed with prejudice.

To begin with, had the claims been reviewed by the Article I District of Columbia Court of Appeals, this Article III court would be required under 28 U.S.C. § 1738 and the Constitution's full faith and credit clause to give preclusive effect to that court's judgment. The Supreme Court applied this rule in affirming the dismissal of a Title VII claim where a state court upheld a state administrative agency's rejection of the claim as meritless. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Since the plaintiff here did not seek judicial review by the District of Columbia Court of Appeals, § 1738 does not apply. There is

no state court decision to afford preclusive effect.

The Supreme Court went on to note in *Kremer,* however, that "so long as opposing parties had an adequate opportunity to litigate disputed issues of fact, res judiciata is properly applied to decisions of an administrative agency acting in a 'judicial capacity.'" *Id.* at 484 n. 26, 102 S.Ct. 1883 at 1899 n. 26. The Court cited *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), which stated that res judicata is unhesitatingly applied by the courts "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly brought before it which the parties have had an opportunity to litigate...." This principle of "administrative res judicata" was recognized by the District of Columbia Court of Appeals in *William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1194 (D.C.1980).

■ The significance of the distinction between the investigatory and the adjudicatory capacities of an agency is apparent when footnote 26 is read in conjunction with another footnote in *Kremer* which states that "[s]ince it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts." *Kremer,* 456 U.S. at 470 n. 7, 102 S.Ct. at 1891–92 n. 7. Thus, decisions rendered by agencies acting in a purely administrative or investigatory capacity similar to the role of the EEOC do not have a preclusive effect on the federal courts. The agency in *Kremer* never reached its adjudicatory role, but stopped after its investigation resulted in a finding of no probable cause. The exercise of its authority extended no further than that of the EEOC, which cannot adjudicate claims or impose sanctions and, therefore, under footnote 7, its decision had no preclusive effect. In contrast, where, as here, an agency determines that probable cause exists and then goes on to adjudicate the claim in proceedings substantially similar to those employed by the courts, footnote 26 provides that administrative res judicata properly applies to the decision. *See Buckhalter v. Pepsi-Cola General Bottlers, Inc.,* 768 F.2d 842 (7th Cir.1985), (adjudicative agency decision had preclusive effect); *Zywicki v. Moxness Products, Inc.,* 610 F.Supp. 50 (E.D.Wisc.1985) (res judicata bars suit following adjudicatory hearing by state agency). *But see Reedy v. State of Florida,* 605 F.Supp. 172 (N.D.Fla.1985) (unreviewed state agency decision does not preclude action on same claim in federal court).

■ In order to have preclusive effect, the administrative proceeding provided must be the "essential equivalent of a judicial proceeding." *William J. Davis, Inc.,* 412 A.2d at 1194. Such elements include adequate notice, the right to present and rebut evidence, findings of fact and conclusions of law, a final decision, and formal procedures. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982). The Human Rights Act gives the Commission on Human Rights all the powers of an adjudicatory body. D.C.Code §§ 1–2552 through 2554. Where the OHR, acting in an investigatory capacity, finds probable cause the Commission next conducts a public hearing in accordance with the procedures promulgated pursuant to the District of Columbia Administrative Procedure Act, D.C.Code § 1–2552, and the Commission's Rules of Procedure for Contested Cases, 31 D.C. Register No. 50, p. 6267, § 100 *et seq.* (1984).

The Commission must afford the parties before it an opportunity to present oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination "as may be required for a full and true disclosure of the facts." D.C. APA at § 1–1509(b). The Commission is required to issue findings of fact and conclusions of law supported by "reliable, probative, and substantial evidence." D.C.Code § 1–2553. The Commission may afford relief where warranted including cease and desist or-

ders, orders to reinstate or for money relief such as back pay, compensatory damages, and attorney's fees. These orders are appealable to the District of Columbia Court of Appeals. Thus, the procedures provided by the Commission are essentially equivalent to a judicial proceeding.

The Court turns now to the question whether res judicata is applicable to the claims of this plaintiff. Clearly, the plaintiff was given an adequate opportunity to litigate her claim before the Commission. Attorneys attempted to represent her before the Commission and ample opportunities were given her to present evidence. She was extended the equivalent of a judicial proceeding which resulted in dismissal of her claims with prejudice because of her failure to cooperate. In dismissing her complaint, the Commission acted pursuant to its Rules which state that a complaint may be dismissed when a complainant engages in "willful dilatory conduct, resists the Commission or . . . fails to be prepared for any scheduled phase of the hearing process." Commission Rules of Procedures, 31 D.C. Register No. 50, §§ 133.1, 133.2. The plaintiff could have appealed this ruling directly to the District of Columbia Court of Appeals, but she chose otherwise.

Res judicata applies where there is a final judgment on the merits in an earlier action, an identity of the cause of action, and an identity of the parties in the two suits. *See Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). A dismissal for failure to prosecute a claim operates as an adjudication on the merits unless the dismissal order otherwise specifies. Fed.R.Civ.P. 41(b). In the District of Columbia, a dismissal with prejudice for

failure to prosecute a claim operates as an adjudication on the merits. *Colbert Refrigeration Co. v. Edwards*, 356 A.2d 331, 332 (D.C.1976). There is no question, then, that the plaintiff obtained a final judgment on the merits of her retaliation claim since the Commission clearly designated the dismissal as being with prejudice for failure to prosecute. The plaintiff had representation before the Commission so this is not a case with a pro se plaintiff ignorant of the required procedures. The plaintiff's failure to appeal to the District of Columbia Court of Appeals does not affect the finality of the decision. Rather, an adverse decision from which no appeal has been taken is res judicata and bars any future action on the same claim. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 4, 101 S.Ct. 2424, 2428 n. 4, 69 L.Ed.2d 103 n. 4 (1981). Since this was a final judgment and since the parties and claims are identical to those brought before the agency, the Commission's decision would be given full preclusive effect in a District of Columbia court and, therefore, is to be given full preclusive effect here.[1] Accordingly, the Court finds that the plaintiff's claims under Title VII, Section 1981, and the District of Columbia Human Rights Act should be dismissed as barred by the doctrine of administrative res judicata.

## II

### A. Breach of Contract

The plaintiff alleges that her "employment with defendant for six years established an employment contract for an indefinite term." In her opposition to the motion to dismiss, she states: "It is plaintiff's theory that by virtue of the [plaintiff's] unblemished record for six years with annual merit increases, [that she had] a legit-

---

1. The importance of the effect given an agency decision by the state of issuance is illustrated by a recent decision by the Court of Appeals for the Fourth Circuit. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Maryland does not permit preclusive effect to be accorded unemployment compensation findings because of the differences between Title

VII and the state unemployment compensation statute. Thus, the Court of Appeals overturned the trial court's decision. In the District of Columbia, since Title VII and the D.C. Human Rights Act are substantially identical, the agency determination would be given preclusive effect in the District of Columbia courts.

imate expectation and implied guarantee of continued employment by defendant." On this basis, the plaintiff asserts that she may recover for breach of contract.

 Primarily, the plaintiff's breach of contract claim should be dismissed because it is time barred by the statute of limitations. The statute of limitations in this jurisdiction for a breach of contract claim is three years, commencing at the time of the alleged breach. D.C.Code § 12–301(7). *See Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200, 205 (D.D.C. 1983). Although the claim was filed more than two months after the statutory period and is, therefore, time-barred, the Court does examine the claim in light of the liberal policy basis for claims brought under and with Title VII actions.

The general rule in the District of Columbia is that employment contracts of indefinite duration are terminable by the employer or employee at will with no ensuing liability on the part of either. *See Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C.1961). The plaintiff asserts that the general rule was modified in *Hodge v. Evans Financial Corp.*, 707 F.2d 1566 (D.C.Cir.1983), such that an exception was created for "implied" employment contracts. *Hodge* is not applicable to this case in that this case does not present a question of the parties' intent when they negotiated a contract for permanent employment. The plaintiff here admits that at the time of the agreement the contract was for an indefinite term with no mention of permanent employment. Absent a contractual agreement by the parties to the contrary, employment contracts in this jurisdiction are terminable at will. *See Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979).

Furthermore, the plaintiff's assertion that at a minimum, she was entitled to reasonable notice of her dismissal is unfounded under the decision in *Uriarte v. Perez-Molina*, 434 F.Supp. 76 (D.D.C.1977). The plaintiff states that the Court in *Uriarte* held that an allegation of termination without reasonable notice supports a cause

of action for breach of an at-will contract. The facts in that case are determinatively different from those in this case since Uriarte had a contract for the court to review. Furthermore, the court's mention of "reasonable time" does not support a cause of action, but pertains to a principle of contract construction that "a contract of indeterminate duration may become terminable by . . . either party after a reasonable lapse of time." *Id.* at 79–80. Uriarte failed to allege that a reasonable time did not lapse prior to his dismissal. The plaintiff's argument would, perhaps, seem more valid if she gave some explanation that two consecutive 30–day probationary periods were something other than a notice of dissatisfaction. The possibly discriminatory motive for these periods is unimportant for the basis of this particular claim.

 In the absence of an express contractual provision or a pre-hearing inducement to the contrary, there is no indication that plaintiff's employment was not at will. Neither an employer nor an employee need give notice of termination to the other in an at-will relationship. *Taylor v. Greenway Restaurant, Inc., supra.* Such termination may be given for any reason at the wish of either party. *See id.* For the foregoing reasons, plaintiff's breach of contract claim must be dismissed.

### B. *Wrongful Discharge in Violation of Public Policy*

In Count III of the plaintiff's complaint, she argues that the Court should promulgate a public policy exception to the at-will employment doctrine. The plaintiff states that she was wrongfully discharged in violation of the non-retaliation provision of the Human Rights Act—a clear contravention of public policy. She relies on a number of decisions in other jurisdictions which have recognized this intentional tort. *See, e.g., Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). This jurisdiction does not recognize a public policy exception. Furthermore, *Adler* is distin-

guishable, even in Maryland, when, as here, there exists a statutory remedy for violations of clear public policy. *See Chekey v. BTR Realty, Inc.,* 575 F.Supp. 715, 717 (D.Md.1983).

■■■ Beyond the non-existence of this cause of action in this jurisdiction, the claim is time-barred in that it was filed after the District of Columbia's residuary limitations period of three years. D.C.Code § 12–301(8) (1981). This claim therefore must be dismissed.

### C. *Implied Covenant of Good Faith and Fair Dealing*

Count IV alleges that an implied contract of good faith and fair dealing existed between the parties such that NCHP could not act arbitrarily and fire the plaintiff without just cause or notice. Although some jurisdictions permit recovery under this theory, this jurisdiction has not followed suit.

■■■ Since an action for an implied covenant of good faith and fair dealing would not be recognized in this jurisdiction and moreover since this claim is also time-barred by the residuary limitations statute, this Court declines to recognize this theory of liability.

### III

In accordance with the foregoing reasons and upon consideration of the defendant's motion to dismiss, or in the alternative, for summary judgment and the motion to strike the plaintiff's request for a jury trial, compensatory and punitive damages under Title VII, the opposition thereto, and the replies, surreplies, and supplemental memoranda thereafter, it hereby is

ORDERED, that the defendant's motion to dismiss is granted in its entirety and the plaintiff's amended complaint is dismissed with prejudice.

SO ORDERED.